UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

MELISSA HOLDER,

             *Plaintiff*,              **MEMORANDUM & ORDER**

  - against -              No. 24-cv-2362(KAM)(LKE)

RHONDA BOBB,
LET'S TALK WITH RHONDA BOBB LLC,

             *Defendants*.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Melissa Holder ("Holder" or "Plaintiff") commenced the instant diversity action against Defendants Rhonda Bobb ("Bobb") and Let's Talk with Rhonda Bobb LLC ("Let's Talk") (collectively, "Defendants" or "Bobb Defendants"), alleging defamation ("Count One"), injurious falsehood ("Count Two"), and personal injuries ("Count Three"). (*See* ECF No. 23, "Second Amended Complaint" or "SAC" ¶¶ 11-60.) Presently before the Court is Defendants' motion to dismiss the Second Amended Complaint (ECF No. 23) under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 25, "Defs. Mem.") For the reasons stated herein, the Court finds that Plaintiff has failed to state a claim, and Defendants' motion to dismiss the Second Amended Complaint is **GRANTED**.

**BACKGROUND**

      The Court accepts the factual allegations in Plaintiff's

Second Amended Complaint as true for the purpose of resolving Defendants' motion to dismiss under Rule 12(b)(6). *See Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## I.   **Factual Background**

Plaintiff Holder, a Guyanese citizen residing in New Jersey, is a social media influencer. (SAC ¶¶ 2, 7-8.) Plaintiff operates under a Facebook page under the name "Melly Mel," and produces "various talk shows" on current affairs and entertainment, particularly relating to Guyana. (*Id.* ¶¶ 7-8.) Plaintiff has approximately 115,000 Facebook followers. (*Id.* ¶ 8.)

Defendant Bobb is a citizen of New York. (*Id.* ¶ 2.) Bobb, like Plaintiff, is a "social media personality with a focus on the current affairs of Guyana." (*Id.* ¶ 9.) Bobb is the sole member of defendant Let's Talk With Rhonda Bobb, LLC, a domestic corporation "registered" in the state of New York, and operates under a Facebook page by Defendant Let's Talk, which has approximately 48,000 Facebook followers. (*Id.* ¶ 10.) Bobb produces social media content in support of a Guyanese political party that Plaintiff opposes. (*Id.* ¶ 41.)

Plaintiff alleges that, between February 18 and 20, 2024, Defendants engaged in "conduct intending deliberately to defame,

harass, bully and intimidate" Plaintiff on social media.
(*Id.* ¶ 12.)  According to Plaintiff, Bobb published a series of
videos and written posts claiming that Plaintiff had "engaged in
criminal conduct by extorting large sums of money from certain
individuals," and is in the United States illegally.  (*Id.* ¶¶ 13-
15.)

In construing the Second Amended Complaint most favorably to
Plaintiff, the Court identifies six specific statements by Bobb
that Plaintiff appears to allege are defamatory:

- First, Bobb's statement that Plaintiff should "stop trying
  to take the heat off yourself, we all know you getting paid
  to do people dutty wuk [*sic*], go back to Guyana."[1]  (SAC ¶
  17, "Statement 1".)

- Second, Bobb's statement to her audience stating: "ask
  [Plaintiff] the reason she cover up the story  . . . why
  you here over Melly Mel scunt if she got 2.4 . . . When
  she find it where she could extort money she does that,
  that's what she been doing and when I found out that I
  backed away from everything . . . Now I don't want to be
  implicated with this fucker no more, I don't want to be

---

[1] Although Plaintiff indicates that this statement was made as a "live comment"
between February 18 to 20, 2024, (SAC ¶ 17), it is unclear when exactly this
statement was made and whether this was an oral or written statement.  The Court
also notes that, to the extent any of these statements are transcribed from a
video clip, the video itself is not affixed to any of Plaintiff's filings, and
it is unclear who, or what, transcribed the statement.

implicated in that.  I don't agree with what she did with critics, I don't believe Mr. Mohammed should have give [*sic*] her those things to post on the internet and she should have never posted those things on the internet . . . You're right in Brooklyn, you're not hard to find bitch . . . . Unless you moved from where you were because of the extorsion [*sic*]."  (SAC ¶ 18, "Statement 2".)

- Third, Bobb's oral statements on a live video on February 18, 2024, stating: "[Plaintiff] trying to throw the heat off she because people are saying that Mr. Mohammed paid she . . . She's using all you, ya'll fucking stupid scunt for money. Because when ya'll send she these big fucking big stories, guest [*sic*] what she do, she teasing oh I got a big thing coming, oh I got a big thing coming up and then it doesn't drop, guest [*sic*] what, she sends the story to people, I'm about to drop this and then she collects millions of fucking dollars to stop the fucking story, ya, that's what she's doing.  So ya'll didn't now what she's doing that exactly what the fuck she's doing."  (SAC ¶ 19, "Statement 3".)

- Fourth, Bobb's statements on that same live video, stating: "you want we play dirty? 89 million in extorsion [*sic*] money, split between her and a group of people, 89 million dollars that's how long they have been doing it.  That's

4

the number of reports they have against them over the last 3 years.  89 million dollars.  It's a group of them that have been extorting people of money on the internet.  Since she's team Mohammed, I'm team Critics.  Guest [*sic*] what she's getting money to do she dirty work."  (SAC ¶ 20, "Statement 4".)

- Fifth, Bobb's statement on an unspecified date that Bobb has "always represented [Holder] but she would never represent me because this hair straight . . . I would stand up with everything about them, they all about race, fuck all of them, they fake as fuck, fuck all of them."  (SAC ¶ 22, "Statement 5".)  Plaintiff does not allege whether this was an oral or written statement.

- Sixth, Bobb's statements on an unspecified date that "I get attorney money, and I would make sure she never see [*sic*] a green card in this country.  I am an American.  We already know where the fuck you're living, you're living in a basement.  You're an illegal citizen."  (SAC ¶ 24, "Statement 6".)  Plaintiff also does not allege whether this was an oral or written statement.

In summary, Plaintiff alleged that Defendants made statements accusing Plaintiff of collecting millions of dollars extorted from people in exchange for not publishing certain stories.  (*Id.* ¶ 19.)  Defendants also allegedly described Plaintiff as "living in

a basement" and "an illegal citizen." (*Id.* ¶ 24.) Defendants also allegedly accused Plaintiff of being paid by Arzuddin Mohammed ("Mohammed"), an individual under federal probe for "his role in public corruption in Guyana" and "in bribery and money laundering," to publish false videos of another social media influencer known as "Critics." (*Id.* ¶¶ 31-32.)

According to Plaintiff, Bobb stated in a video that she had "a personal vendetta" against Plaintiff because Plaintiff reposted an unfavorable video about Bobb and posted unfavorable videos about "Critics." (*Id.* ¶¶ 23, 27.) In one video, Bobb stated, "[s]ince [Plaintiff is] team Mohammed, I'm team Critics." (*Id.* ¶ 20.) Plaintiff further alleges that Bobb made her allegedly defamatory statements with the knowledge that these statements were false, (*see e.g., id.* ¶¶ 22, 30), or that Bobb was at least "reckless and or negligent" in that she failed to "take all reasonable steps to verify" the truth of her statements and "should have anticipated" the harm her conduct would cause. (*Id.* ¶¶ 47, 51.)

Following Bobb's February 2024 statements, Plaintiff alleges that she suffered harm to her social media business, further harassment from Bobb's viewers, and the loss of "several potential advertising deals and some of her followers." (*Id.* ¶¶ 36, 43, 56.) Plaintiff also alleges that her clients who advertise through her channel lost an indeterminate amount. (*Id.* ¶¶ 36, 43.) Plaintiff also developed, and sought medical attention for, "panic attacks,

anxiety and depression." (*Id.* ¶¶ 54-55, 57.) Plaintiff seeks $3,000,000 in damages, as well as a permanent injunction preventing Defendants from publishing further defamatory statements, punitive damages, costs and fees. (*Id.* at 11.)

## II. **Extrinsic Evidence**

In connection with the instant motion, the parties have submitted numerous exhibits, screenshots, and articles with their respective filings. (*See, e.g.*, Defs. Mem. at 9-12; ECF Nos. 26-1 & 26-3, Pl. Opp. Exs. A & C; ECF No. 28, "Defs. Reply" at 10-11, 14.) Neither party provides any authority for the Court to consider extrinsic evidence in ruling on the instant motion to dismiss.

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves" because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its

entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (citation modified)); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (finding that where plaintiff "has actual notice" of the extrinsic documents, the "necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.")

Plaintiff's opposition to the motion to dismiss affixes two exhibits containing screenshots of certain Facebook posts by two non-parties. (*See* Pl. Opp. Exs. A & C.) These screenshots include posts from individuals named "Hon. Nigel Dharamlall" and "Robin Singh" accusing Plaintiff of extortion, blackmail, and marriage fraud. (*See* Pl. Opp. Exs. A & C.) Since Plaintiff alleges that the Bobb Defendants defamed her by stating that Plaintiff engaged in extortion and is illegally present in the United States, (*see* SAC ¶¶ 14, 19), the Court finds the social media posts in Plaintiff's Exhibit A and C to be integral to the allegations in the Second Amended Complaint and may be considered when evaluating the sufficiency of the Second Amended Complaint. *See Kreiss v. McCown DeLeeuw & Co.*, 37 F. Supp. 2d 294, 298 n.3 (S.D.N.Y. 1999) (considering documents not attached to the complaint, but which were integral to the plaintiffs' claims, and which the plaintiff had notice of and relied upon); *Condit v. Dunne*, 317 F. Supp. 2d 344, 357-58 (S.D.N.Y. 2004) (taking judicial

notice of documents that "aid the Court in its determination of whether plaintiff states a claim for relief [for slander]" and that help "place [the defendant's] comments in the broader social context").

Defendants' reply brief, (ECF No. 28), references and cites to certain public articles as support for the argument regarding Plaintiff's status as a public figure. Generally, a district court "has the discretion to take judicial notice of internet materials." *BSH Hausgerate, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 670 n.1 (S.D.N.Y. 2017); *Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."), *aff'd*, 658 F.3d 254 (2d Cir. 2011). In particular, "[w]hen determining whether a plaintiff is a public figure in defamation cases, courts 'can take judicial notice of the existence of articles written by and about [the plaintiff], though not for the truth of the matter asserted in the documents themselves.'" *Khalil v. Fox Corp.*, 630 F. Supp. 3d 568, 578 (S.D.N.Y. 2022) (citing *Biro v. Conde Nast* ("*Biro II*"), 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015)). Accordingly, the Court will take judicial notice of the existence, but not the content, of the articles cited in Defendants' reply brief to ascertain whether Plaintiff is a limited-purpose public figure.

Aside from Plaintiff's Exhibits A and C and the news articles referenced in Defendants' reply brief, the Court declines to take judicial notice of any other extrinsic materials cited in or affixed to the parties' briefing.

## III. Procedural Background

Plaintiff initially filed this action on March 29, 2024. (ECF No. 1.)  On June 25, 2025, Plaintiff filed an amended complaint. (ECF No. 15, "Amended Complaint".)  On September 27, 2024, after the Court advised Plaintiff of certain deficiencies in her complaint, Plaintiff filed the Second Amended Complaint, asserting claims of (1) defamation, (2) injurious falsehood, and (3) personal injuries.  (SAC ¶¶ 11-60.)

On October 8, 2024, Defendants moved for a pre-motion conference to discuss their anticipated motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* ECF No. 24.) On December 16, 2024, Defendants' motion to dismiss was fully briefed and filed with the Court.  (*See generally* ECF Nos. 25-1, 26, 28.)  The Court now considers Defendants' motion to dismiss.

## LEGAL STANDARD

Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

On a Rule 12(b)(6) motion to dismiss, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint."  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d

111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). To survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

In resolving a motion under Rule 12(b)(6), the Court must limit its consideration to the complaint, documents incorporated by reference into the complaint, documents not incorporated but nonetheless integral to the complaint, and matters properly subject to judicial notice. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (citing *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## DISCUSSION

Plaintiff brings claims of defamation, injurious falsehood, and personal injuries under New York law. (SAC ¶¶ 11-60.) Defendants move to dismiss the Second Amended Complaint on the grounds that (1) Plaintiff is a limited-purpose public figure who fails to allege facts demonstrating actual malice; and (2) Defendants' statements constitute non-actionable constitutionally

protected speech. (*See* Defs. Mem. at 4.) The Court will address each point in turn.

## I.  Defamation

Defamation is "the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (internal quotations omitted). To state a claim for defamation under New York law, the plaintiff must allege that: (1) the defendant made a defamatory statement concerning the plaintiff, (2) the statement was published to a third party, (3) the defendant's conduct met the applicable fault standard, (4) the statement was false, and (5) the statement caused the plaintiff damages or was *per se* actionable. *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

### A.  Public Figure Status

When the plaintiff is a "public figure," the applicable fault standard is "actual malice," meaning that the plaintiff must allege sufficient facts to support a reasonable inference that the defendant made the statement with reckless disregard for the truth. *Palin*, 940 F.3d at 809. A private figure need only allege that the defendant acted with negligence. *LaNasa v. Stiene*, 731 F. Supp. 3d 403, 417 (E.D.N.Y. 2024), *aff'd*, No. 24-1325, 2025 WL 893456 (2d Cir. Mar. 24, 2025). "Whether or not a person . . . is a public figure is a question of law for the court to decide."

*Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F. Supp. 661, 666 n.3 (S.D.N.Y. 1991) (citations omitted).

Defendants argue that Plaintiff is a limited-purpose public figure who must plead actual malice to proceed with her defamation claim. (*See* Defs. Mem. at 8-12.) To determine whether Plaintiff is a limited-purpose public figure, Defendants must show that Plaintiff:

> (1) successfully invited public attention to [her] views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected [herself] into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Biro II*, 963 F. Supp. 2d at 270 (quoting *Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136-37 (2d Cir. 1984)). Plaintiff disputes the first, second, and third elements. (*See* Pl. Opp. at 12.)

### 1.   Invitation of Public Attention

The Court first considers whether Plaintiff invited public attention to influence others. "A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Gottwald v. Sebert*, 148 N.Y.S.3d 37, 44 (1st Dep't 2021) (quoting *Wolston v. Reader's Digest Assn. Inc.*, 443 U.S. 157, 167 (1979)). Rather, "[v]oluntary attention-seeking, or

voluntary participation in a particular controversy is a key factor in determining limited public figure status." *Mitre Sports Int'l, Ltd. v. Home Box Office, Inc.*, 22 F. Supp. 3d 240, 251 (S.D.N.Y. 2014).

Plaintiff is, by her own admission, a social media personality with over 115,000 Facebook followers. (SAC ¶¶ 7, 8.) Using her platform, Plaintiff "produces various talk shows on events focusing on current affairs and entertainment, particularly those affecting the country of Guyana[.]" (*Id.* ¶ 7.) Defendants assert that Plaintiff invites public attention by "post[ing] controversial statements to her page," and "willfully enter[ing] the fray of the public conversation with respect to Guyanese politics[.]" (Defs. Mem. at 9, 13.) Plaintiff does not dispute Defendants' assertions. Rather, Plaintiff admits to publishing inflammatory content that invites public attention, such as rape allegations by an underaged victim claiming to have been raped by a Guyanese politician, Nigel Dharamlall ("Dharamlall"). (*See* ECF No. 26, Pl. Opp. at 12.) Moreover, Plaintiff's own characterization of her alleged injury – *i.e.*, the loss of "several potential advertising deals and some of her followers" – further underscores how Plaintiff has purposefully surrendered part of her private life in reaping the profits generated by public attention to her Facebook page. (*See* SAC ¶ 36.) *See Lerman*, 745 F.2d at 137 (finding plaintiff a limited-purpose public figure in part

because plaintiff sought "publicity both for herself and her books" and "[h]er organized and ongoing efforts to maintain media access . . . to call attention to her writings and disseminate her views[.]") Thus, the first element is satisfied.

### 2. Voluntary Involvement in a Public Controversy

The second element in determining whether Plaintiff is a limited-purpose public figure can be considered in two sub-parts: first, the existence of a public controversy, and second, Plaintiff's voluntary involvement in that public controversy.

### a. Public Controversy Regarding Guyanese Politics

A public controversy is "any topic upon which sizeable segments of society have different, strongly held views," even if the topic does "not involve[] political debate or criticism of public officials." *Lerman*, 745 F.2d at 138; *see also Waldbaum v. Fairchild Pubs.,* 627 F.2d 1287, 1296 (D.C. Cir. 1980) (explaining that a "public controversy" is a "real dispute, the outcome of which affects the general public or some segment in an appreciable way"). Even controversies which engage a "specialized" audience may still be considered "public" in nature. *See McNally v. Yarnall*, 764 F. Supp. 838, 847 (S.D.N.Y. 1991) (finding statements by art historian on a specific type of art to be matters of public concern).

The Court agrees with Defendants' assertion that the

underlying public controversy for which Plaintiff has invited public attention and voluntarily injected herself relates to "Guyanese politics and related affairs." (Defs. Mem. at 9; Defs. Reply at 7.) Plaintiff's discourse relating to political issues and criticism of political officials is a quintessential topic of public concern. *See Buckley v. Littell*, 539 F.2d 882, 889 (2d Cir. 1976) (noting that a "topic of enormous public interest" may "go[] to the heart of political discourse"); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964) ("In the realm of religious faith, and in that of political belief, sharp differences arise. . . . To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification . . . and even to false statement.")

Plaintiff argues, in opposition, that "there was no public controversy" which Plaintiff was involved in influencing an outcome. (Pl. Opp. at 12.) However, Plaintiff then undermines her own argument by subsequently describing her involvement in a public controversy involving a Guyanese politician, Dharamlall, who had been accused of raping an underaged victim. (*Id.* at 12-13.) Thus, despite Plaintiff's claims to the contrary, the Court finds that Plaintiff inserted herself into a public controversy relating to Guyanese politics and politicians.

### b.    Plaintiff's Voluntary Involvement

"Generally, an individual can become a limited purpose public

figure only through his own actions; by 'enter[ing] voluntarily into one of the submarkets of ideas and opinions,' one 'consent[s] . . . to the rough competition of the marketplace.'" *Biro II*, 963 F. Supp. 2d at 274 (citing *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996)). "By definition, comments regarding a limited purpose public figure are subject to heightened scrutiny only to the extent that they are relevant to the public figure's involvement in a given controversy." *Biro II*, 963 F. Supp. 2d at 270-71. However, "once a plaintiff is deemed a limited purpose public figure, courts allow the heightened protections to sweep broadly, covering all statements by defendants that are not 'wholly unrelated to the controversy.'" *Id.*

As discussed above, Plaintiff concedes that she voluntarily "releas[ed] information[] she received from an underaged complainant who claimed that she was sexually assaulted by the disgraced [Guyanese] politician." (Pl. Opp. at 9.) Plaintiff further noted that, following her "publication of the underaged alleged victim information . . ., other complaints [*sic*] have come forward claiming that they were also sexually assaulted or exploited by Dharamlall." (*Id.*) In other words, Plaintiff not only voluntarily "plunge[d] into the arena and enter[ed] the fray" of a public controversy but also did so in a manner that generated further public discourse. *Lerman*, 745 F.2d at 138. Thus, the Court finds that Plaintiff's involvement was voluntary and the

second element of Plaintiff's voluntary involvement in a public controversy is satisfied.

### 3. Assumption of Prominent Position in the Controversy

"[A p]laintiff's degree of voluntar[y] involvement in the public controversy" is critical to the determination of whether the plaintiff is a public figure. *Chandok v. Klessig*, 648 F. Supp. 2d 449, 458 (N.D.N.Y. 2009) (citation omitted), *aff'd*, 632 F.3d 803 (2d Cir. 2011). A "trivial" or "tangential" role in the controversy is not sufficient to be a limited-purpose public figure. *Biro II*, 963 F. Supp. 2d at 276 (citation omitted).

Defendants urge the Court to consider articles from various Guyanese media outlets, which describe Plaintiff as a "well-known" and "vocal critic" located at the "forefront" of various controversies related to the Guyanese government. (*See* Defs. Reply at 10 n.5 & n.6.) Though courts normally may not consider any materials outside the complaint on a motion to dismiss, a court may "take judicial notice of the existence of articles written by and about [plaintiff], though not for the truth of the matter asserted in the documents themselves. Courts in this Circuit have employed judicial notice in making determinations about whether plaintiffs are public figures at the motion to dismiss stage." *Biro II*, 963 F. Supp. 2d at 271 n.9. For purposes of resolving the instant motion to dismiss, the Court takes judicial notice of

the articles, but only for the limited purpose of noting the existence of certain articles written about Plaintiff.

The Court finds Plaintiff's own submissions to be additionally persuasive in finding that she was no mere bystander to controversies relating to Guyanese politics and politicians. As Plaintiff noted in her complaint, she had amassed a following of over 115,000 Facebook users by producing various talk shows on issues affecting Guyana. (SAC ¶ 8.) Additionally, as shown in Plaintiff's exhibits to her opposition, Guyanese politician Dharamlall would engage with Plaintiff on social media and refer to Plaintiff by name in his posts. (*See* Pl. Opp. Ex. A.) Accordingly, the Court finds that the third element is satisfied, and Plaintiff is a limited-purpose public figure for purposes of this action.[2]

### B. Actual Malice

As a limited-purpose public figure, Plaintiff must allege actual malice to sustain her defamation claim. Actual malice requires the statement at issue to be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Palin*, 940 F.3d at 809 (quotations omitted). "[A]ctual malice does not simply connote ill will or spite; rather it is 'a

---

[2] Plaintiff does not dispute the fourth element to determine limited-purpose public figure status, which requires Plaintiff to have "regular and continuing access to the media." *Biro II*, 963 F. Supp. 2d at 270. Given Plaintiff's social media profile with access to 115,000 followers, the Court finds that this element is satisfied. (*See* SAC ¶¶ 7, 8.)

term of art denoting deliberate or reckless falsification.'" *Biro II*, 963 F. Supp. 2d at 276 (quoting *Massoon v. New Yorker Mag.*, 501 U.S. 496, 499 (1991)).

Actual malice must be plausibly alleged. That is, there must be a sufficient basis "to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *BYD Co. v. VICE Media LLC*, No. 21-1097, 2022 WL 598973, at *2 (2d Cir. Mar. 1, 2022) (summary order) (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001)). "Although actual malice is subjective, a court typically will infer actual malice from objective facts, understanding that a defendant in a defamation action will rarely admit that [she] published the relevant statements with actual malice." *Id.* Accordingly, "whether actual malice can plausibly be inferred will depend on the facts and circumstances of each case." *Biro v. Conde Naste*, 807 F.3d 541, 545 (2d Cir. 2015). However, "[a]ctual malice, even by way of recklessness, is . . . a difficult standard to meet." *Biro II*, 963 F. Supp. 2d at 277.

Plaintiff alleges that Defendants exhibited "a clear malicious intent" because Defendants believed that Plaintiff "failed to defend" Defendants in an online disagreement and Plaintiff "posted videos against someone [Defendants] supported." (SAC ¶ 27.) Plaintiff also separately argues that Defendants' statements were made with actual malice because the content of

Defendants' statements indicate a "personal vendetta" against Plaintiff. (Pl. Opp. at 8.)

Both of Plaintiff's arguments fail to meet the actual malice standard, which, in the defamation context, is neither mere animosity nor ill will. *See Margolies v. Rudolph*, No. 21-cv-2447 (SJB), 2023 WL 6151514, at *8 (E.D.N.Y. Sept. 20, 2023) (finding no actual malice where plaintiff's "allegations amount to nothing more" than "suggesting that [defendant] bore ill will"). As the Second Circuit stated in *Biro*, actual malice requires Defendants to "entertain[] serious doubts as to the truth" of their assertions. *Biro*, 807 F.3d at 546. To be sure, "[e]vidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may also support a finding of actual malice." *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 183 (2d Cir. 2000). However, "[t]he actual malice standard focuses not 'on the defendant's attitude towards the plaintiff, but rather on the defendant's attitude towards the truth, so [the defendant's] feelings towards [the plaintiff] do not speak to actual malice.'" *Coleman v. Grand*, 523 F. Supp. 3d 244, 261 (E.D.N.Y. 2021) (citing *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 101-02 (2d Cir. 2000).

Aside from a single *ipse dixit* allegation that "Rhonda Bobb knew very well that the allegations she was publishing about the

Plaintiff were false and she published such defamatory content with full knowledge of its falsity," Plaintiff alleges nothing further to substantiate her claim that Defendants harbored serious doubts as to the truth of their statements.[3] (SAC ¶ 30.) Plaintiff's conclusory allegations fail to substantiate a finding of actual malice, and the Court is "not required to accept the truth of legal conclusions couched as factual allegations." *Papasan*, 478 U.S. at 286; *see Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 622-23 (2d Cir. 1988) ("bare assertions of ill will are not sufficient to establish a triable issue of actual malice"). Accordingly, Plaintiff fails to allege actual malice as to any of the allegedly defamatory statements,

---

[3] Plaintiff argues, in her opposition, that Defendants allegedly learned of the purported extortion from public statements made by Nigel Dharamlall, a Guyanese politician, who was embroiled in public scandal. (Pl. Opp. at 20.) This is an unavailing argument for several reasons. As an initial matter, these facts are asserted solely in Plaintiff's opposition brief rather than in Plaintiff's Second Amended Complaint, and as such, are not properly considered by the Court in deciding the motion to dismiss. *See Paul v. Bailey*, No. 09-cv-5784 (RO), 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013) ("[A]s a general rule, . . . courts should not consider factual allegations made for the first time in opposition papers."); *Friedman v. MiraMed Revenue Grp., LLC*, No. 12-cv-5328 (VB), 2012 WL 5592163, at *3 (S.D.N.Y. Nov. 19, 2012) ("[T]he Court declines to consider the additional facts set forth in plaintiff's opposition papers that are not in his complaint.")

Moreover, even if Plaintiff made such an allegation in the Second Amended Complaint, Defendants' "reliance on . . . unreliable sources without further investigation may support an inference of actual malice," only where the plaintiff includes additional allegations to buttress that inference. *Biro*, 807 F.3d at 546; *see also Cabello-Rondon v. Dow Jones & Co., Inc.*, 720 F. App'x 87, 89 (2d Cir. 2018) (summary order) (noting that "reliance on anonymous sources alone does not support an inference that the publisher acted with actual malice."). Plaintiff's argument, even if read with all inferences drawn in her favor, fails to plausibly allege that Defendants were "subjectively aware that the source was unreliable." *BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 826 (S.D.N.Y. 2021) (citing *Secord v. Cockburn*, 747 F. Supp. 779, 789 (D.D.C. 1990)). Accordingly, Defendants' reliance on Nigel Dharamlall as a source does not, without more, support an inference of actual malice.

and her defamation claim must be dismissed.

### C. Defamatory Meaning

Even if Plaintiff adequately alleged actual malice, Plaintiff separately fails to allege that Defendants' statements contained defamatory meaning, and Plaintiff's defamation claim may be dismissed for this separate and independent reason.

For a statement to be defamatory under New York law, it must be (1) "a writing," (2) "defamatory," (3) "factual—that is, not opinion," and it must be (4) "about the plaintiff, not just a general statement." *Chau v. Lewis*, 771 F.3d 118, 126-27 (2d Cir. 2014). Whether a statement is defamatory is a legal question that may be resolved at the pleadings stage. *Celle*, 209 F.3d at 177 (citing *Aronson v. Wiersma*, 483 N.E.2d 1138, 1139 (N.Y. 1985)).

### 1. Insults or Name-Calling

As an initial matter, statements amounting to "no more than name-calling" or "general insult[s]" are not defamatory. *Klepetko v. Reisman*, 839 N.Y.S.2d 101, 102 (2d Dep't 2007) (quoting *DePuy v. St. John Fisher College*, 514 N.Y.S.2d 286, 287 (4th Dep't 1987)). "To be actionable, therefore, the statement must do more than cause discomfort or affront; the statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject." *Chau*, 771 F.3d at 127. A defamatory statement must expose an individual to "public hatred,

shame, obloquy, contumely, odium, contempt, ridicule, aversion,
ostracism, degradation or disgrace, or . . . induce an evil opinion
of one in the minds of right-thinking persons, and . . . deprive
one of their confidence and friendly intercourse in society." *Id.*
(citing *Kimmerle v. N.Y. Evening Journal, Inc.*, 186 N.E. 217 (N.Y.
1933)). Even inflammatory insults, without more, are not
defamatory. *See Rivas v. Restaurant Assocs., Inc.*, 203 N.Y.S.3d
593, 594 (1st Dep't 2024) (affirming dismissal where defendant
allegedly called plaintiff a "child molester," "pervert," and
"pedophile" because such statements were mere rhetorical
hyperbole).

Here, even construed in a light most favorable to Plaintiff,
several of Defendants' alleged statements are mere insults and do
not contain a cognizable defamatory connotation. First,
Defendants' statement that Plaintiff is "living in a basement" and
an "illegal citizen" may be insulting, but such comments do not
rise to defamation. (*See* SAC ¶ 24.) Similarly, Defendants'
statements that Plaintiff is "getting paid to do dutty wuk" and is
"fake as fuck" may also be insulting but are non-defamatory.[4] (SAC

---

[4] As an additional issue, the Court notes that it is unclear exactly what these
statements mean. And, where it is wholly unclear how an ordinary reader would
ascribe coherent meaning to these statements at all, it is even less plausible
that an ordinary reader would construe them in a light which could produce
hatred, shame or contempt of Plaintiff or her business. As the Second Circuit
stated, the tort of defamation requires "conduct that vilifies or exposes one
to shame 'in the minds of *right-thinking persons.*'" *Chau*, 771 F. 3d at 132
(emphasis added) (citing *Kimmerle*, 186 N.E. at 217). Where, as here, a "right-
thinking person" could not form an understanding of what precisely is being

¶¶ 17, 22.) Accordingly, Statements 1, 5, and 6 are not reasonably susceptible to a defamatory connotation and are therefore non-actionable, regardless of Plaintiff's status as a limited-purpose public figure or private figure.[5]

### 2. Figurative and Hyperbolic Statements

Statements 2, 3, and 4 – where Plaintiff alleges that Defendants accuse her of extortion and blackmail – are similarly non-actionable because they are the "loose, figurative, or hyperbolic" sort of statements that are not actionable for defamation. *Polish Am. Immigration Relief Comm., Inc. v. Relax*, 596 N.Y.S.2d 756, 758 (1st Dep't 1993).

In order to determine whether a statement is defamatory rather than mere hyperbole, courts must look "at the content of the whole communication, its tone and apparent purpose." *Immuno AG. v. Moor-Jankowski*, 567 N.E.2d 1270, 1278 (N.Y. 1991). Depending on the tone and context of the statement, even statements accusing a party of engaging in "extortion" or "blackmail" may not be actionable for defamation. *See Small Business Bodyguard Inc. v. House of*

---

said, it would naturally follow that the "right-thinking person" could not construe the statement as defamatory. *Id.*

[5] Additionally, Statement 5 – which states that "they" are "fake as fuck" – also does not satisfy the element which requires the defamatory statement to be "of and concerning" Plaintiff and not just a general statement. (SAC ¶ 22.) *See Brady v. Ottaway Newspapers Inc.*, 445 N.Y.S.2d 786, 788 (2d Dep't 1981) (a plaintiff must allege that "the allegedly defamatory comment refer[s] to the plaintiff"). Plaintiff does not allege who "they" are in the context of this statement or how this group of people may or may not relate to Plaintiff. Thus, for this additional and separate reason, the Court finds that Statement 5 is not defamatory.

*Moxie, Inc.*, 230 F. Supp. 3d 290, 312 (S.D.N.Y. 2017) (finding statements accusing plaintiff of "extortion, manipulation, fraud, and deceit" to be non-actionable for defamation). Indeed, the Supreme Court, in *Greenbelt Co-op. Pub. Ass'n v. Bresler*, found that statements accusing a land developer of engaging in "blackmail" to acquire certain zoning ordinances were non-actionable because the "tone and apparent purpose" of the statements made clear that it was only an expression of frustration, and not an accusation of a criminal offense. 398 U.S. 6, 7 (1970); *see also 600 W. 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 938 (N.Y. 1992) (holding that the defendant can prevail under both federal and New York state law given that he prevails under the narrower federal *Greenbelt* analysis.)

Here, Defendants' statements constitute no more than an internet "rant," (SAC ¶ 19), and no reasonable reader would understand Bobb's statements to be a serious accusation of criminal conduct. *See 600 W. 115th St. Corp.*, 603 N.E.2d at 937-38 (noting the general tenor of defendant's "rambling, table-slapping monologue" to indicate a non-actionable statement). Defendants' statement claiming that Plaintiff "collects millions of fucking dollars" from people who want to stop Plaintiff from publishing a certain story is a hyperbolic, generalized assertion without discernible basis in fact. *See id.* (finding the statement "the lease and proposition is as fraudulent as you can get and it smells

of bribery and corruption" to be non-actionable hyperbole). Accordingly, Statements 2, 3 and 4, taken in the – albeit minimal – context provided in the Second Amended Complaint, are hyperbolic statements and non-actionable for defamation.

### D. Falsity

In addition to failing to allege actual malice and defamatory meaning, Plaintiff also fails to adequately allege the falsity of Defendants' statements. For a statement to be defamatory, it must be false, since true assertions cannot give rise to direct defamation claims. *See Gross v. New York Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993) ("falsity is a necessary element of a defamation cause of action"). In New York, the burden falls on the plaintiff to establish the falsity of allegedly defamatory statements. *See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 171 (N.Y. 2002) ("[a] party alleging defamation must allege that the statement is false").

Plaintiff's Second Amended Complaint alleges that Defendants' statements are false because "Plaintiff is an upright member of society and has never been charged with any crime or accused of extortion."[6] (SAC ¶ 28.) Plaintiff also alleges that "defendant Rhonda Bobb knew very well that the allegations she was publishing about the Plaintiff were false and she published such defamatory

---

[6] The Court notes that this assertion is undermined by Plaintiff's own submissions which include posts from non-party Nigel Dharamlall accusing Plaintiff of extortion. (*See* Pl. Opp. Ex. A. at 1-2.)

content with full knowledge of its falsity." (*Id.* ¶ 30.) Neither of Plaintiff's unspecific, conclusory allegations adequately alleges the falsity of Defendants' statements. *See Cabello-Rondon v. Dow Jones & Co., Inc.*, No. 16-cv-3346 (KBF), 2017 WL 3531551, at *6 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018) ("To plausibly plead falsity, [plaintiff] must do more than perfunctorily state that a statement is false; rather, [plaintiff] 'must identify *how* the defendant's statement was false.'" (alteration in original) (quoting *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 245 (2d Cir. 2017)).

Plaintiff argues that Defendants have conceded the falsity of their statements by arguing that their statements were non-actionable opinions. (Pl. Opp. at 18.) This argument is untethered to any legal authority. Even if the Court credited Defendants' argument that their statements were constitutionally protected opinion, that conclusion does not support a finding of falsity because opinions are not assertions of fact. *See Gross*, 623 N.E.2d at 1166 (noting the "much discussed distinction between expressions of opinion, which are not actionable, and assertions of fact, which may form the basis of a viable libel claim."); *see also Davis v. Boeheim*, 22 N.E.3d 999, 1004 (N.Y. 2014) ("A defamatory statement of fact is in contrast to 'pure opinion' which under our laws is not actionable because '[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no

matter how offensive, cannot be the subject of an action for defamation.")  In other words, an opinion is incapable of being either true or false.  Thus, having found Plaintiff's arguments unavailing, the Court finds that Plaintiff has not sufficiently alleged falsity and her defamation claim may be dismissed on this separate basis.

## II.  Plaintiff's Other Claims

Plaintiff also brings other tort claims of injurious falsehood and personal injuries against Defendants.[7]  (SAC ¶¶ 45-60.)  For the reasons stated below, the Court finds that both claims must also be dismissed.

As noted by other courts in this Circuit, "it is now well settled that '[w]hen additional tort claims are aimed at controlling the same speech that is the basis of a libel claim, courts should not entertain the additional claims under less stringent standards.'"  *Biro*, 883 F. Supp. 2d at 483 (quoting *Anyanwu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690, 693-94 (S.D.N.Y. 1995)).  And where "tort claims essentially restate a defamation claim that has been dismissed on a motion to dismiss, the tort claims must also be dismissed."  *Biro*, 883 F. Supp. 2d at 483 (citing *O'Brien v. Alexander*, 898 F. Supp. 162, 172 (S.D.N.Y.

---

[7] The Court notes that, though Plaintiff's claim for "personal injuries" is unmistakably based in tort, it is unclear whether she is asserting a claim under a theory of negligent infliction of emotional distress or pursuant to some other theory of tort liability.

1995)); *see Anyanwu*, 887 F. Supp. at 693 ("New York cases have held that a separate cause of action for what are essentially defamation claims should not be entertained.") (citing cases).

Here, Plaintiff's claims for injurious falsehood and personal injuries only restate her defamation claim, which, as discussed above, fails to state a claim. Thus, because Plaintiff's claims for injurious falsehood and personal injuries rely on the same underlying facts and statements as her defamation claim, both claims are also dismissed for failure to state a claim.

**III. Leave to Amend**

Having concluded that Plaintiff fails to state a claim against Defendants, the Court further concludes that Plaintiff should not be granted leave to amend her complaint for the third time. At the outset, the Court notes that Plaintiff did not request leave to amend or provide any indication how amendment may cure her pleading defects.

On one hand, a court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 126 (2d Cir. 2013). On the other, leave to amend is left to a court's discretion, and a court cannot err in exercising that discretion by "failing to grant a request that was not made." *Cruz*, 720 F.3d at 126 (affirming dismissal with prejudice where plaintiff "never made a formal motion to amend" and opposition to defendant's motion to dismiss

"failed to request that the amended complaint be dismissed without prejudice"). The Court accordingly sees no reason to grant a further opportunity to amend, particularly when Plaintiff herself did not request such relief.

Further, justice does not require granting leave to amend under these circumstances. Leave to amend may be denied when it "appears that granting leave . . . is unlikely to be productive." *Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996) (affirming denial of leave to file second amended complaint with more allegations where plaintiff failed to add such allegations to first amended complaint). Amendment is unlikely to be productive after the plaintiff "twice fail[s] to present a valid cause for relief." *Trump v. Vance*, 480 F. Supp. 3d 460, 505 (2d Cir. 2020).

Here, the Court had previously explained to Plaintiff that certain pleading defects in her Amended Complaint, (ECF No. 15), may be cured by adding more specific allegations and facts supporting actual malice. (*See* Minute Entry dated September 13, 2024.) Despite the Court's prior explanation, Plaintiff again failed to remedy the deficiencies in her Second Amended Complaint and failed to allege actual malice. Moreover, Plaintiff has not indicated what facts, if any, she could plead to survive dismissal if provided an opportunity to amend her complaint. Finally, Plaintiff has not requested leave to amend her complaint for the third time. Accordingly, this case is dismissed with prejudice

and without leave to re-plead.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**. Plaintiff's claims are hereby **DISMISSED** with prejudice. The Clerk of Court is respectfully directed to enter judgment and close this case.

**So ordered.**

Dated:    August 22, 2025
           Brooklyn, New York    **Kiyo A. Matsumoto**
                             United States District Judge
                             Eastern District of New York